UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON D.,[1]<br><br>                                    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[2]<br><br>                                    Defendant. | Case No.:  24-cv-1839-JLS-MMP<br><br>**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S BRIEF**<br><br>[ECF No. 9] |

Carlton D. ("Plaintiff") appeals the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g), asserting the Administrative Law Judge ("ALJ") failed to properly assess the residual functional capacity ("RFC"). ECF No. 9 at 4.

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Frank Bisignano is the current Commissioner of Social Security and is automatically substituted as the defendant pursuant to Federal Rule of Civil Procedure 25(d).

24-cv-1839-JLS-MMP

This matter comes before the Court for a Report and Recommendation on Plaintiff's Merits Brief. ECF No. 9. Defendant filed a Responsive Brief, to which Plaintiff replied. ECF Nos. 10, 11. After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **RECOMMENDS** the District Judge **REVERSE** the Commissioner's denial of benefits and **REMAND** the matter for further administrative proceedings consistent with this opinion.

## I. BACKGROUND

On the date last insured, Plaintiff was thirty-six years old with a high school education and past work experience as a furniture rental clerk, repossessor, warehouse worker, and infantry weapons crewmember in the Army. Administrative Record ("AR") 26, 106. Plaintiff claims beginning March 24, 2022,[3] he became disabled and unable to work as a result of combined physical and mental impairments including posttraumatic stress disorder, major depressive disorder, osteoarthritis left wrist, lumbar degenerative disc disease, and plantar fasciitis. AR 106–08.

On October 19, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning March 24, 2022. AR 219–20. The claim was denied by initial determination on April 28, 2023, and upon reconsideration on July 14, 2023. AR 106–29, 130–43.

Plaintiff filed a written request for a hearing. AR 169–70. On March 29, 2024, the ALJ held a video hearing. AR 33–64. Plaintiff, represented by counsel, appeared and testified. AR 37–57. An impartial vocational expert also appeared and testified. AR 57–64. On May 31, 2024, the ALJ issued an unfavorable decision denying benefits. AR 17–28.

---

[3] The alleged onset date in this application is one day following the ALJ's prior decision date finding Plaintiff was not under a disability from March 1, 2017 through March 23, 2022. *See* AR 78.

24-cv-1839-JLS-MMP

Plaintiff requested Appeals Counsel review, which was denied on August 12, 2024. AR 1–6. The ALJ's decision then became the final decision of the Commissioner of Social Security. 42 U.S.C. § 405(h).

Plaintiff timely appealed the denial to this Court for federal judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). ECF No. 1.

**II.    SUMMARY OF ALJ'S FINDINGS**

**A.    The Five-Step Evaluation Process**

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least twelve months; if not, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1509 (setting forth the twelve-month duration requirement).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, Appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. § 404.1520(e). The fourth step requires the ALJ to determine whether the claimant has sufficient RFC to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

24-cv-1839-JLS-MMP

At step four of the sequential process, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv) and (f)–(g).

At step five, the burden then shifts to the ALJ to establish the claimant is not disabled because there is other work existing in "significant numbers in the national economy" the claimant can do, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c); *see also* 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, Appendix 2. *Id*. The determination of this issue comprises "the fifth and last step" in the sequential analysis. 20 C.F.R. § 404.1520(a)(4)(v).

**B.      The ALJ's Application of the Five-Step Process**

At step one, the ALJ determined Plaintiff had "not engage[d] in substantial gainful activity during the period of his alleged onset date of March 24, 2022 through his date last insured of December 31, 2022." AR 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: "osteoarthritis (OA) of left wrist status post surgery, plantar fasciitis, posttraumatic stress disorder (PTSD), [and] major depressive disorder (MDD)." AR 20. The ALJ found Plaintiff's "report of back disorder with pain" was a nonsevere impairment because it "results in symptoms that are episodic in nature and managed conservatively." AR 20.

At step three, the ALJ determined Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the Listing, noting in particular he considered Listings 1.17, 1.18, 12.04, and 12.15. AR 20. Applying the psychiatric review technique for evaluating mental impairments at step three, the ALJ determined Plaintiff had moderate limitations in all four areas of "understanding, remembering, or applying information," "interacting with others,"

24-cv-1839-JLS-MMP

"concentrating, persisting, or maintaining pace," and "adapting or managing oneself." AR 20–21. The ALJ found Plaintiff's mental impairments did not satisfy either the Paragraph B or Paragraph C criteria.[4] AR 20–21.

The ALJ determined, through the date last insured, Plaintiff had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), with certain exertional, postural, and mental limitations as follows:

> [Plaintiff] can occasionally climbing of ramps and stairs, never climbing of ladders, ropes, scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling. The individual can frequently handle, finger, and feel with the non-dominant left upper extremity. The individual must avoid concentrated exposure to hazards such as operational control of moving machinery and unprotected heights. The individual can understand, remember, and carry out simple, routine tasks, no interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and is limited to jobs requiring only simple work-related decisions however can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work.

AR 21–22.

At step four, the ALJ concluded Plaintiff was unable to perform past relevant work as a furniture rental clerk, repossessor, warehouse worker, and infantry weapons crewmember. AR 26.

At step five, the ALJ considered that Plaintiff was a "younger individual" on the date of last insured and had at least a high school education. AR 26. The ALJ determined transferability of job skill was not material to the disability determination because "using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills." AR 26. The vocational expert testified, given Plaintiff's age, education, work experience, and RFC, he would be "able to

---

[4] The Paragraph B criteria involves limitations in four areas of mental functioning, and the Paragraph C criteria are used to evaluate mental disorders that are "serious and persistent[.]" 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.01.

24-cv-1839-JLS-MMP

perform the requirements of representative light occupations with an SVP [Specific Vocational Preparation] of two," such as price marker (DOT 209.587-034), housekeeping/cleaner (DOT 323.687-014), and burrito maker (DOT 520.687-046). AR 27. Based on the vocational expert's testimony, the ALJ determined, through the date last insured, Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." AR 27.

Accordingly, the ALJ determined Plaintiff was not under a disability at any time from March 24, 2022 through December 31, 2022, the date last insured. AR 27.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (citing *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)) (citation modified). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (citation omitted)). The standard requires "more than a mere scintilla, but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015), as amended). Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

A reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion,

24-cv-1839-JLS-MMP

and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id.* at 1010 (citation omitted). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) ("[C]ourts can consider only the reasons the ALJ asserts.") (citation modified).

A court may also reverse the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (citation modified) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## IV.   ANALYSIS

Plaintiff contends the RFC fails to reflect all of Plaintiff's limitations. ECF No. 9 at 4. Specifically, Plaintiff challenges the ALJ's decision on the following grounds: (1) in the RFC, the ALJ did not account for all the limitations identified by the opinions of Drs. Morris, Friedland, and Covey, which the ALJ found persuasive; (2) the ALJ failed to consider the full impact of Plaintiff's PTSD on his ability to work; and (3) the ALJ's errors were not harmless. ECF No. 9 at 6–10. The Court addresses Plaintiff's arguments in turn.

### A.   Whether the RFC Reflects the Three Persuasive Medical Findings

Plaintiff first contends the ALJ failed to incorporate all the findings of the persuasive opinions of Drs. Morris, Friedland, and Covey. ECF No. 9. As a result, Plaintiff asserts the ALJ's assessed RFC does not capture the total limiting effects of Plaintiff's impairments. *Id.* at 8–9.

24-cv-1839-JLS-MMP

       1.     <u>Prior Administrative Medical Findings of Drs. Morris, Friedland, and Covey</u>

       a.     <u>Dr. Morris</u>

In September 2022, State agency consultant Dr. Kim P. Morris, PsyD, reviewed the record and performed a mental residual functional capacity assessment of Plaintiff. AR 96–103.[5] As the ALJ correctly noted, Dr. Morris found Plaintiff had "moderate" limitations in all four areas Paragraph B criteria of "understanding, remembering, or applying information," "interacting with others," "concentrate, persist, or maintain pace," and "adapt or manage oneself." AR 97; *see* AR 25.

Dr. Morris also stated more detailed findings for each area. In "understanding, remembering, or applying information," Dr. Morris opined Plaintiff was "moderately limited" in his "ability to understand and remember detailed instructions" and "not significantly limited" in his abilities "to remember locations and work-like procedures" and "to understand and remember very short and simple instructions." AR 99.

With respect to sustained concentration and persistence limitations, Dr. Morris opined Plaintiff was "moderately limited" in his abilities "to carry out detailed instructions" and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 100–01. However, Dr. Morris stated Plaintiff was "not significantly limited" in his abilities to "to carry out very short and simple instructions[,]" "to maintain attention and concentration for extended periods[,]" "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances[,]" "to sustain an ordinary routine without special supervision[,]" "to work in coordination with or in proximity to others without being distracted by them," and "to make simple work-related decisions . . . ." *Id.*

---

[5] Dr. Morris' administrative medical finding was in connection with initial determination of Plaintiff's prior disability application. *See* AR 90–104.

24-cv-1839-JLS-MMP

In the area of social interaction, Dr. Morris opined Plaintiff was moderately limited in his abilities to "to interact appropriately with the general public," "to accept instructions and respond appropriately to criticism from supervisors," and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 101. Dr. Morris, however, found Plaintiff was "not significantly limited" in his abilities to "to ask simple questions or request assistance" and "to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." AR 101–02.

In the area of adapting or managing oneself, Dr. Morris found Plaintiff was "moderately limited" in his "ability to respond appropriately to changes in the work setting" but "not significantly limited" in his abilities "to be aware of normal hazards and take appropriate precautions," "to travel in unfamiliar places or use public transportation," and "to set realistic goals or make plans independently of others." AR 102.

When asked for an additional explanation regarding the mental residual functional capacity, Dr. Morris stated the following restrictions:

> [Plaintiff] can understand, remember and carry out simple instructions and can make simple work related decisions, can tolerate occasional changes in a routine work setting, and can occasionally interact with supervisors and coworkers, but not with the general public.

AR 102–03.[6]

### b. Dr. Friedland

In April 2023, state agency consultant Dr. Myles Friedland, Ph.D., also reviewed the record and performed a mental residual functional capacity assessment of Plaintiff as of the date of last insured, December 31, 2022, in connection with this application at the initial determination level. AR 122–26.

---

[6] Neither party acknowledged nor addressed the information contained in the "Additional Explanation" section in the findings of Drs. Morris, Friedman, or Covey. *See* AR 102–03, 126, 142; ECF Nos. 9, 10.

24-cv-1839-JLS-MMP

Dr. Friedland found Plaintiff had the same limitations as Dr. Morris found in Plaintiff's abilities to understand and remember. AR 122–23.

With respect to sustained concentration and persistence, Dr. Friedland likewise found Plaintiff was "moderately limited" in his abilities "to carry out detailed instructions" and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 123–24. Dr. Friedland, however, opined Plaintiff had additional moderate limitations in his abilities "to maintain attention and concentration for extended periods" and "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *Id.*

Dr. Friedland found Plaintiff had the same social interaction and adaption limitations as Dr. Morris. AR 124–25.

Finally, when asked for an additional explanation, Dr. Friedland stated the following concrete restrictions:

> Claimant can understand and remember simple and some more complex instructions.
> Claimant can sustain concentration and pace for simple one and two-step mental tasks only due to psychological based symptoms.
> Claimant can maintain the social demands of a work-like setting involving limited contact with co-workers and the general public only.
> Claimant can adapt to changes in a work-like setting involving simple cognitive tasks and limited social contacts only due to a combination of psychological based symptoms.

AR 126.

### c.   Dr. Covey

In July 2023, state agency consultant Dr. Elizabeth Covey, PsyD, on reconsideration, performed a mental residual functional capacity assessment based on the medical records in Plaintiff's file. AR 140–42.

Dr. Covey opined Plaintiff had the same understanding and memory limitations as both Drs. Morris and Friedland. AR 141

10

24-cv-1839-JLS-MMP

With respect to sustained concentration and persistence, Dr. Covey found Plaintiff had the same moderate limitations as Dr. Friedland, plus an additional moderate limitation in Plaintiff's ability "to work in coordination with or in proximity to others without being distracted by them." AR 141.

Dr. Covey found Plaintiff has social interaction limitations, though in contrast to Drs. Morris and Friedland, Dr. Covey found Plaintiff's ability "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes" was not significantly limited. AR 141. Otherwise, Dr. Covey found Plaintiff had the same moderate limitations as Drs. Morris and Friedland. *Id.*

In the area of adapting and managing oneself, like Drs. Morris and Friedland, Dr. Covey found Plaintiff was "moderately limited" in his "ability to respond appropriately to changes in the work setting." AR 142. Dr. Covey also opined Plaintiff had an additional moderate limitation in his "ability to set realistic goals or make plans independently of others." *Id.*

Finally, Dr. Covey provided an additional explanation with restrictions similar to Dr. Morris.[7] AR 142.

> [Plaintiff] can understand, remember and carry out simple instructions and can make simple work related decisions, can tolerate occasional changes, in a routine setting, and can occasionally interact with supervisors and coworkers, but not with the general public.

AR 142.

### 2. The ALJ's Evaluation and RFC Assessment

In evaluating the three prior administrative medical findings as part of the RFC determination, the ALJ found:

---

[7] The only difference between the two opined mental residual functional capacity assessments was Dr. Morris phrased one restriction as "can tolerate occasional changes in a routine work setting" whereas Dr. Covey worded the restriction as "can tolerate occasional changes, in a routine setting." *Compare* AR 101–02 *with* AR 142.

24-cv-1839-JLS-MMP

> In September 2022, State agency consultant, Dr. Morris, found moderate limitations in all "B" criteria domains. In April 2023 and July 2023, Drs. Friedland and Covey affirmed the findings. The findings are persuasive. The State agency supported their findings with explanations based on a review of the available records at that time, and an understanding of Social Security Administration disability policies and evidentiary requirements. They are generally consistent with the Dr. Livesay's exam showing some difficulty with recall, and ambivalent mood and anxious affect.

AR 25 (internal citations omitted).[8] In translating his medical and prior administrative medical findings into the RFC, the ALJ assessed mental limitations in the RFC as follows:

> [Plaintiff] can understand, remember, and carry out simple, routine tasks, no interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and is limited to jobs requiring only simple work-related decisions however can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work.

AR 21–22.

### 3.    The Parties' Positions

Both parties acknowledge the ALJ found the opinions of Drs. Morris, Friedland, and Covey to be persuasive. AR 25; ECF Nos. 9 at 6, 10 at 3. Plaintiff also does not dispute the ALJ's RFC adequately captures many of the opined limitations of the three medical consultants. Rather, Plaintiff asserts the ALJ erred by failing to address and incorporate three moderate limitations opined by Drs. Morris, Friedland, or Covey into the RFC: (1) his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform and a consistent pace without an

---

[8] Plaintiff does not challenge the ALJ's evaluation of any of these prior administrative medical findings. *See* ECF Nos. 9, 11. The ALJ also assessed the medical opinion of Dr. Livesay regarding Plaintiff's mental impairments, finding it was "not persuasive" because it was "inconsistent with evidence of some difficulty with recall, and ambivalent mood and anxious affect, and the claimant's diagnosis of PTSD." AR 25. Neither party challenges this finding. *See* ECF Nos. 9, 10.

24-cv-1839-JLS-MMP

unreasonable number and length of rest periods[,]" (2) his "ability to maintain attention and concentration for extended periods," and (3) his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances . . . ." ECF No. 9 at 7–8. Plaintiff argues the assessed limitations in the RFC of requiring only "simple work-related decisions" and "can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work" does not capture "the total limiting effects" of all Plaintiff's mental impairments. *Id.* at 8. Plaintiff contends the absence of the opined moderate limitations from the RFC renders it inaccurate. *Id.* at 9.

Defendant contends substantial evidence supports the ALJ's RFC finding. ECF No. 10 at 5. Defendant construes Plaintiff's argument as "the ALJ should have included additional mental limitations in his RFC finding because the ALJ found him to have moderate mental limitations at step two." *Id.* at 3. Defendant contends because the regulations define a moderate limitation as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair[,]" the ALJ found Plaintiff's ability to function in these areas was "fair" and "therefore did not necessarily need to be precluded by his RFC finding." *Id.* at 3–4 (citation omitted).

### 4. Applicable Law for the RFC Assessment

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1 ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments—even those that are not severe—and must assess his "work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1; *see* 20 C.F.R. § 404.1545(a)(1)–(2) and (e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685,

24-cv-1839-JLS-MMP

690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

An RFC determination must be based on "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). In the context of assessing mental limitations, as the ALJ acknowledged in his step three analysis,[9] "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" and "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." AR 21. The regulations require an ALJ to assess "the nature and extent of [the plaintiff's] mental limitations and restrictions" to determine his ability to "work on a regular and continuing basis." 20 C.F.R. § 404.1545(c). "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the plaintiff's] ability to do past work and other work." *Id.*

A court must uphold an ALJ's RFC assessment when "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs when he provides an incomplete RFC determination that ignores or discounts "significant and probative evidence in the record favorable to [the plaintiff's] position." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

---

[9] In his evaluation of the Paragraph B criteria, the ALJ relied on the report of consultative examiner, Dr. Jerry Livesay (though the ALJ erroneously referred to him as "Lovesay" and "Lovejoy") and Plaintiff's Function Report only. *See* AR 20–21. The ALJ's step three analysis does not rely on or cite to Drs. Morris, Friedland, or Covey. *See id.* Rather, the only discussion of the opinions of Drs. Morris, Friedland, and Covey is when the ALJ found the opinions persuasive, as described above. *See* AR 25.

24-cv-1839-JLS-MMP

5.    Analysis

In assessing the medical opinions and prior administrative medical findings, the ALJ did not specifically acknowledge or address the specific opined limitations of the three medical consultants. *See* AR 25. Rather, the ALJ noted generally Dr. Morris "found moderate limitations in all 'B' criteria domains" and "Drs. Friedland and Covey affirmed these findings." *Id.* The ALJ then merely declared, without further analysis as to their functional assessments or limitations themselves, "[t]he findings are persuasive." *Id.*

"The ALJ must consider the step-[three] limitations along with *all* of the relevant evidence in the case record when forming the RFC." *Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (citation modified). The ALJ, however, generally "need not discuss *all* evidence presented to her. Rather, she must explain why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (citation modified)); *see Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995), *as amended on denial of reh'g* (June 5, 1995) ("[T]he Secretary may not reject 'significant probative evidence' without explanation.") (citation omitted).

Here, the ALJ did not identify specific limitations or explain which of Drs. Morris, Friedman, and Covey's opined limitations he found persuasive. Nor did the ALJ explain which of the opined limitations the ALJ rejected and the basis for doing so, particularly to the extent the three opinions varied. As discussed below, this was reversible error.

a.    Sustained Concentration, Persistence, and Pace

All three medical consultants opined Plaintiff had moderate limitations in his abilities "to carry out detailed instructions" and complete a normal workday or work week without interruptions from his psychological condition, and Drs. Friedland and Covey opined Plaintiff had additional moderate limitations in his abilities "to maintain attention and concentration for extended periods" and "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *See* AR 100–01, 123–24, 141. Dr. Covey also found Plaintiff was "moderately limited" in his ability "to

24-cv-1839-JLS-MMP

work in coordination with or in proximity to others without being distracted by them." AR 141.

While all three doctors ultimately concluded Plaintiff could understand and remember at least simple instructions and make simple decisions, Dr. Friedland further opined Plaintiff could "sustain concentration and pace for simple one and two-step mental tasks only due to psychological based symptoms." AR 126.

Having found the three consultants' opinions persuasive, "the ALJ was required to incorporate their moderate limitations, or otherwise explain why they were not adopted." *Sonja Renee T. v. Comm'r of Soc. Sec.*, No. 24-cv-00323-REP, 2025 WL 2696925, at *4 (D. Idaho Sept. 22, 2025); *see Flores*, 49 F.3d at 571 ("[T]he ALJ's written decision must state reasons for disregarding evidence of that nature."). The Ninth Circuit has recognized reversible error where an ALJ accorded great weight to a medical opinion, yet the ALJ's assessed RFC failed to take into account certain limitations identified by that opinion. *See Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013). The Court reasoned "[t]he ALJ provided no reasons for disregarding aspects" of the medical opinion "without providing any explanation." *Id.* Here, the ALJ did precisely that. Despite finding Dr. Friedland's opinion persuasive, the ALJ never acknowledged, incorporated, or rejected Dr. Friedland's opined limitation that Plaintiff could "sustain concentration and pace for simple one and two-step mental tasks only . . . ." *See* AR 25, 126. This was error. Nor did the ALJ question the vocational expert about a person limited to simple one and two-step mental tasks only. *See* AR 57–64.[10]

The Court cannot conclude the ALJ's error was inconsequential to Plaintiff's ultimate disability determination. *See Garcia*, 768 F.3d at 932. The Ninth Circuit has

---

[10] The ALJ posed a hypothetical to the VE that matched Plaintiff's medical-vocational profile. The ALJ then posed a separate hypothetical adding a mental limitation that the individual (1) would be off task greater than ten percent of the workday or (2) would be absent two days or more a month on a recurring basis. AR 61–62. The VE testified either additional mental limitation would be work preclusive. AR 62.

24-cv-1839-JLS-MMP

recognized a limitation to simple one-to-two step tasks is more restrictive than a limitation to simple, routine instructions: *See Leach v. Kijakazi*, 70 F.4th 1251, 1257 (9th Cir. 2023) ("Level-one jobs encompass instructions that include, at most, two tasks.");[11] *Rounds*, 807 F.3d at 1003 ("Only tasks with more than one or two steps would require 'detailed' instructions."). As the Ninth Circuit explained in *Leach*:

> Most pertinently, level-one jobs require only "simple one-or two-step instructions" but level-two jobs require "detailed but uninvolved . . . instructions." Both reasoning levels require simple (or "uninvolved") instructions. . . . The key distinction between those two levels is that level-one jobs require instructions involving at most two steps, whereas level-two jobs may require 'detailed'—that is, potentially longer—instructions.

70 F.4th at 1256–57 (citation modified). At step five, the ALJ concluded Plaintiff was capable of performing requirements of representative light occupations including a price marker, DOT 209.587-034, 1991 WL 671802, and burrito maker, 520.687-046, 1991 WL 674058—both of which require level two reasoning. Thus, had the ALJ incorporated Dr. Friedland's opined restriction limiting Plaintiff to simple one and two-step tasks, a properly formulated RFC might contain mental limitations inconsistent with representative occupations identified by the vocational expert that the ALJ found Plaintiff could perform.

---

[11] "The Dictionary of Occupational Titles assigns each job a 'reasoning development' level, on a six-tiered scale of Level One (simplest) to Level Six (most complex)." *Id.* at 1256 (citing Dictionary of Occupational Titles, App. C, § III, 1991 WL 688702 (4th ed. 1991)). The first two levels are as follows:

> LEVEL 1[:] Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

> LEVEL 2[:] Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.*

24-cv-1839-JLS-MMP

*See, e.g., Seiber v. Colvin*, No. 14-cv-01149-BR, 2015 WL 4994195, at \*4 (D. Or. Aug. 19, 2015) (finding harmful error where the ALJ merely limited the plaintiff to "simple, routine tasks" despite giving significant weight to medical opinions the plaintiff was limited to 1-2 step instructions); *Evan T. B. v. Bisignano*, No. 24-cv-1428-JC, 2025 WL 2481056, at \*5 (C.D. Cal. Aug. 28, 2025) (finding the ALJ's limitation to "simple, routine, and repetitive tasks" was inconsistent with the medical opinion the claimant was capable of performing simple one-to two-step tasks); *Stefanie S. v. Kijakazi*, No. 20-cv-1134-RBM, 2022 WL 594547, at \*5 (S.D. Cal. Feb. 25, 2022) ("[A] number of district courts in the Ninth Circuit have reversed ALJ decisions imposing a 'simple, repetitive tasks' RFC limit where the ALJs fail to address and distinguish conclusions by doctors that claimants can perform one-and-two step instructions.") (citation modified).

### b.   Adapting and Managing Oneself

Likewise, in the area of adaption, all three medical consultants opined Plaintiff had a moderate limitation in his "ability to respond appropriately to changes in the work setting," and Dr. Covey found Plaintiff had an additional moderate limitation in his "ability to set realistic goals or make plans independently of others." AR 102, 125–26, 142. Drs. Morris and Covey each stated a concrete limitation Plaintiff could tolerate "occasional" changes in his routine setting, AR 103, 142, whereas Dr. Friedland stated Plaintiff could "adapt to changes in a work-like setting involving simple cognitive tasks and limited social contact only due to a combination of psychological based symptoms." AR 124. Despite finding all three opinions persuasive, the ALJ did not acknowledge, incorporate, or provide a sufficient explanation for rejecting Drs. Morris and Covey's opinions restricting Plaintiff to only "occasional" change in his work setting. *See* AR 25. Nor was the vocational expert asked a hypothetical limiting Plaintiff to "occasional" change in his routine or work setting. *See* AR 57–64. This was error, and the Court cannot conclude the ALJ's error was inconsequential. *See Kilpatrick*, 35 F.4th at 1193 ("[The ALJ] must explain why significant probative evidence has been rejected.") (citation omitted); *Flores*, 49 F.3d at 571 (The ALJ "may not reject 'significant probative evidence' without explanation.") (citation omitted));

24-cv-1839-JLS-MMP

*Betts*, 531 F. App'x at 800 ("The ALJ did err, however, by disregarding aspects of examining physician Dr. Marcel Van Eerd's opinion without providing any explanation."); *see also Bagby v. Comm'r of Soc. Sec.*, 606 F. App'x 888, 890 (9th Cir. 2015) (finding the ALJ's RFC assessment limiting the claimant to "simple, repetitive tasks, no contact with the public, and occasional interaction with coworkers" did not reflect a medical opinion the claimant was limited in her ability to "respond appropriately to usual work situations and to changes in a routine work setting") (citation modified).

### c.   Defendant's Arguments Are Not Persuasive

Defendant makes several unavailing arguments in support of the ALJ's RFC assessment. First, Defendant contends an ALJ is not required to include every moderate limitation in the assessed RFC. ECF No. 10 at 4.[12] While the Court generally agrees an ALJ may not be required to impose restrictions in the RFC based on a "moderate" limitation, the ALJ must "at least consider the issue." *See Tammy W. v. Comm'r of Soc. Sec.*, 787 F. Supp. 3d 1175, 1183 (W.D. Wash. 2025); *Timothy B. v. Saul*, No. 20-cv-03411-SK, 2022 WL 181261, at *4 (N.D. Cal. Jan. 20, 2022) ("While moderate limitations in various areas of functioning are not necessarily *per se* disabling, the ALJ was required to either include them in the RFC or explicitly reject those portions of the doctors' opinions

---

[12] Defendant cites *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) and *LaCroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) for this proposition. Neither case is applicable here. In *Hoopai*, the Ninth Circuit held substantial evidence supported the ALJ's determination the plaintiff did not suffer from a sufficiently severe non-exertional limitation that would require the assistance of a vocational expert and prohibit the ALJ's exclusive reliance on the grids at step five. 499 F.3d at 1078. *Hoopai* did not address the ALJ's assessment of the RFC. *See id.*

*Lacroix* is neither binding nor applicable. 465 F.3d at 887–88. The Eighth Circuit found the ALJ was not required to accept the findings of a non-treating, non-examining physician to the extent such findings were inconsistent with the opinion of an examining physician under the pre-2017 regulations. *Id.* at 888. Here, the pre-2017 regulations do not apply, *see Woods,* 32 F.4th at 792, and it is undisputed the ALJ found the opinions of Drs. Morris, Friedman, and Covey persuasive.

24-cv-1839-JLS-MMP

with reasoned explanations."); *Jeremy S. v. O'Malley*, No. 23-cv-00184-AJB-JLB, 2024 WL 343179, at *22 (S.D. Cal. Jan. 29, 2024), *report and recommendation adopted*, 2024 WL 5705635 (S.D. Cal. Mar. 15, 2024). ("While moderate limitations do not necessarily indicate that Plaintiff is unable to adequately perform work activity, the ALJ was required to either include these limitations in Plaintiff's RFC assessment or provide legally sufficient reasons for rejecting them."). Here, even though the ALJ expressly found the opinions of Drs. Morris, Friedland, and Covey persuasive, the ALJ did not incorporate their opined concrete restrictions; nor did the ALJ reject them through reasoned explanations.

Defendant also cites *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), seemingly for the proposition the ALJ's RFC adequately captures the moderate limitations identified by Drs. Morris, Friedland, and Covey. ECF No. 10 at 4. In *Stubbs-Danielson*, the Ninth Circuit held an ALJ's assessment limiting a claimant to "simple, routine, repetitive work" "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." 539 F.3d at 1174. There, the medical evidence consisted of two opinions from Drs. McCullum and Eather, which the ALJ found persuasive. *Id.* at 1173. Dr. McCullon opined in relevant part the plaintiff was "moderately limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods" and "not significantly limited" in her abilities to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." *Id.* at 1173, 1174. Dr. Eather opined the plaintiff retained the ability to "carry out simple tasks." The Ninth Circuit found "the ALJ translated [the plaintiff's] condition, including the pace and mental limitations, into *the only concrete restrictions available to him*—Dr. Eather's recommended restriction to 'simple tasks.'" *Id.* at 1174 (emphasis added). The Ninth Circuit found the limitation to "simple tasks" was consistent with both doctors' opinions.

Defendant's reliance on *Stubbs-Danielson* is misplaced. Importantly, here, the ALJ's RFC assessment is not consistent with restrictions identified in the medical opinions the

24-cv-1839-JLS-MMP

ALJ found persuasive, as discussed above. *See* AR 100–01, 123–24, 141. Unlike in *Stubbs-Danielson*, there was more than one "concrete restriction" available to the ALJ: Drs. Morris and Covey opined Plaintiff could "understand, remember and carry out simple instructions and . . . make simple work related decisions" but Dr. Friedland further stated Plaintiff could "sustain concentration and pace for simple one and two-step mental tasks only due to psychological based symptoms." *Compare* AR 103, 142 *with* 126. And despite finding all three doctors' opinions persuasive, the ALJ never acknowledged, incorporated, or rejected Dr. Friedland's opined restriction to simple one and two-step tasks only. Thus, the Court cannot conclude the ALJ's RFC limiting Plaintiff to "simple, routine tasks" is consistent with, and sufficiently accounts for, the opined limitations of all three opinions the ALJ found persuasive.

Furthermore, *Stubbs-Danielson* is distinguishable, as it did not address the same scope of moderate limitations presented here. *See, e.g.*, *George S. v. Kijakaji*, No. 20-cv-10257-GJS, 2022 WL 479906, at *3 (C.D. Cal. Feb. 16, 2022) (finding *Stubbs-Danielson* inapposite as it did not address moderate limitations in "maintaining regular attendance, completing a normal workday and dealing with stress in the workplace"); *Blaze J. v. Comm'r of Soc. Sec. Admin.*, No. 24-cv-02251-PHX-SHD, 2025 WL 2733271, at *4 (D. Ariz. Sept. 25, 2025) (finding the Commissioner's reliance on *Stubbs-Danielson* misplaced where "the RFC's limitation to simple tasks addressed limitations relating to concentration, persistence, and pace, which are largely different in nature than the adaptability and self-management limitations at issue here").

### 6.    Conclusion

In sum, although the ALJ found the opinions of Drs. Morris, Friedland, and Covey persuasive—a finding neither party challenges—the ALJ did not incorporate Dr. Friedland's opined restriction Plaintiff could "sustain concentration and pace for simple one and two-step mental tasks only" or Drs. Morris and Covey's opinions limiting Plaintiff to "occasional" change to his work routine setting. While the ALJ may have considered both restrictions, he failed to acknowledge that consideration or provide a legally sufficient

reason for rejecting either. As a result, the Court cannot conclude substantial evidence supports the ALJ's RFC assessment. *See Valentine*, 574 F.3d at 690 ("[A]n RFC that fails to take into account a claimant's limitation is defective."); *Hill*, 698 F.3d at 1161 (finding error where the ALJ provides an incomplete RFC determination that ignores or discounts "significant and probative evidence in the record favorable to [the plaintiff's] position."); *Betts*, 531 F. App'x at 800 ("The ALJ provided no reasons for disregarding aspects of [the persuasive medical] opinion, so we must reverse.").

**B.      Whether the ALJ Considered the Full Impact of the PTSD Diagnosis**

Next, Plaintiff argues the ALJ "failed to consider the full impact of [Plaintiff's] PTSD on his ability to work." ECF No. 9 at 9. Plaintiff highlights two portions of the record. First, Plaintiff cites his report he is "[u]nable to be around men wearing Old Spice Classic cologne/body wash" and had "a nightmare once a month, very hypervigilant, jumpy, irritable, difficulty being intimate [with] wife." *Id.* (quoting AR 405). Second, Plaintiff relies on as statement in the report of Dr. Livesay, the consultative psychiatric examiner, stating Plaintiff's anxiety was "triggered by certain stimuli such as smells and white males." *Id.* (quoting AR 794). Plaintiff contends the ALJ's RFC is defective because it "lacks any limitations to account for [Plaintiff's] inability to be around this segment of the population and certain smells"—specifically "it omits restrictions on exposure to white males and certain olfactory stimuli, both of which are known to trigger PTSD." *Id.*

In opposition, Defendant asserts the ALJ found Plaintiff's PTSD was a severe impairment at step two and provided numerous mental limitations in the RFC. ECF No. 10 at 5. According to Defendant, "[t]o the extent that Plaintiff alleges greater work-related limitations than provided for in the RFC finding, he relies on his own subjective allegations" which the ALJ discounted—a finding which Plaintiff does not challenge. *Id.*

In reply, Plaintiff contends "the medical evidence supports that [Plaintiff's] PTSD is triggered by "certain stimuli, such as certain smells and white males." ECF No. 11 at 5. Plaintiff further argues "the ALJ recognized [Plaintiff's] sexual assault during the hearing

24-cv-1839-JLS-MMP

yet failed to explain why there were no limitations incorporated into the RFC to account for the triggers identified in the medical evidence." *Id.*

The ALJ did not err by not incorporating a limitation into the RFC restricting Plaintiff's exposure to "white males and certain olfactory stimuli" as Plaintiff asserts. Neither of Plaintiff's arguments are persuasive, and substantial evidence supports ALJ's findings on this issue.

First, Plaintiff cites a psychiatry note from June 10, 2022 summarizing Plaintiff's reported symptoms of his PTSD. AR 405. The Ninth Circuit has made clear the ALJ need not accept the plaintiff's "statements as to the severity and limiting effects of his or her symptoms as true." *Laborin v. Berryhill*, 867 F.3d 1151, 1154 n.4 (9th Cir. 2017). Rather, the ALJ must evaluate the plaintiff's "symptom testimony so that the ALJ can take that testimony—insofar as it is credible—into account as part of the RFC assessment." *Id.*; *see Higgins v. Kijakazi*, No. 22-35966, 2023 WL 7211390, at *2 (9th Cir. Nov. 2, 2023) ("An ALJ need not adopt allegations that the record does not support.") (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001)).

In discrediting Plaintiff's subjective statements and limitations—a finding Plaintiff does not challenge—the ALJ found Plaintiff's "statement about the intensity, persistence, and limiting effects" of his symptoms were "inconsistent with the longitudinal medical evidence of record." AR 23. The ALJ specifically identified numerous symptoms attributed to PTSD, including Plaintiff's hypervigilance, inability to tolerate crowds, anger, and lack of trust. AR 22–23. The ALJ concluded the medical records were not consistent with "the degree of limitation alleged" and did not "not support a finding that the claimant's impairments preclude all work activity." AR 24–25. Plaintiff does not challenge the ALJ's evaluation of his subjective statements. *See* ECF No. 9 at 4 (identifying the single disputed issue as "Whether the RFC reflects all of [Plaintiff's] limitations."). Thus, because the ALJ discredited Plaintiff's subjective statements, the ALJ was not required to incorporate Plaintiff's statements regarding intensity, persistence, and limiting effects in the RFC assessment.

24-cv-1839-JLS-MMP

Second, Plaintiff also cites to the report of consultative examiner Dr. Livesay. Notably, the portion cited by Plaintiff is a summary of Plaintiff's reported history and symptoms—not a medical finding or observation:

> The claimant reports a history of post-traumatic stress disorder relative to his six and a half years of service in the US army. He took a medical discharge from the army in 2017 with a 100% VA service connected disability fee. The claimant reports depression and anxiety, but was unable to specify a frequency for the anxiety and depression as well as an intensity of the anxiety and depression. The claimant reported that his anxiety and depression were triggered by certain stimuli such as certain smells and white males. The claimant reported around people that he keeps his distance, but feels okay and is alright when he is alone by himself. . . .

AR 793–94. Despite Plaintiff's reported triggers, Dr. Livesay concluded in relevant part Plaintiff's "ability to interact with the public, coworkers and supervisor was not impaired." AR 796. In evaluating the medical opinions in connection with the RFC assessment, the ALJ expressly found Dr. Livesay's opinion was "not persuasive" because it was "inconsistent with evidence of some difficulty with recall, and ambivalent mood and anxious affect, and the [plaintiff's] diagnosis of PTSD." AR 25. Once again, Plaintiff does not challenge the ALJ's conclusion finding Dr. Livesay's opinion not persuasive. *See* ECF No. 9 at 4 (identifying single disputed issue as "[w]hether the RFC reflects all of [Plaintiff's] limitations.").

In sum, contrary to Plaintiff's argument, there is no medical evidence in the record supporting a limitation restricting Plaintiff's exposure to white males or an environment limitation to avoid certain smells. The ALJ found Dr. Livesay's opinion unpersuasive, and as discussed in detail above, none of the other medical consultants' findings support such a limitation. Consequently, the Court finds substantial evidence supports the ALJ's omitting such a restriction from the RFC.

## V.    REMAND

The Court must still affirm "if the error is harmless." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). An error is considered harmless when it is "inconsequential to

24-cv-1839-JLS-MMP

the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti*, 533 F.3d at 1038).

For the reasons discussed above, the ALJ erred by not incorporating opined restrictions of Drs. Morris, Friedland, and Covey, despite finding the opinions persuasive. As a result, the RFC is defective. Further, the Court cannot conclude the ALJ's error was inconsequential to the nondisability determination, as a properly formulated RFC might contain mental limitations inconsistent with representative occupations identified by the vocational expert that the ALJ found Plaintiff could perform.

Thus, the Court has discretion to either remand for further proceedings before the ALJ or remand for an award of benefits. *Garrison*, 759 F.3d at 1019. Where "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Id.* (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)); *see also Revels*, 874 F.3d at 668.

Plaintiff seeks remand for further administrative proceedings. ECF No. 9 at 11. The Court agrees and finds remand for further administrative proceedings is appropriate.

## VI.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Janis L. Sammartino under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(a) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order:

(1) **APPROVING** and **ADOPTING** this Report and Recommendation;

(2) **REVERSING** the Commissioner's decision; and

(3) **REMANDING** the matter for further administrative proceedings consistent with this opinion.

**IT IS HEREBY ORDERED** any party to this action may file written objections with the Court and serve a copy on all parties no later than **February 18, 2026**. The document should be captioned "Objections to Report and Recommendation."

24-cv-1839-JLS-MMP

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than fourteen days after being served with a copy of another party's objections.

**IT IS SO ORDERED**.

Dated:  February 4, 2026

_____
HON. MICHELLE M. PETTIT
United States Magistrate Judge

24-cv-1839-JLS-MMP